| | |
|---|---|
| VLOCK & ASSOCIATES, P.C.<br>Attorneys for Cadles of Grassy Meadows II, LLC, Creditor<br>230 Park Avenue<br>New York, New York 10169<br>(212) 557-0020<br>Steven Giordano, Esq. (SG 8328) | Chapter 7<br><br>Case No. 05-46781 (REG) |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
In re

        CHARLES MOORE,

                                    Debtor.
-------------------------------------------------------------------X

## NOTICE OF APPEAL

      PLEASE TAKE NOTICE, that CADLES OF GRASSY MEADOWS II, LLC, a creditor in the above-captioned proceeding, hereby appeals under 28 U.S.C. § 158(a) from the final order of Judge Gerber entered in the above-captioned proceeding on October 23, 2006, and from each and every part of the said order.

      The names of all parties to the order appealed from and the names, addresses, and telephone numbers of their respective attorneys are as follows:

      SHAPIRO & CROLAND
      Attention: John P. DiIorio, Esq.
      Counsel for Debtor
      411 Hackensack Avenue
      Hackensack, New Jersey 07601
      (201) 488-3900

JOHN S. PEREIRA
Chapter 7 Trustee
150 East 58th Street
14th Floor
New York, New York 10155
(212) 758 - 5777

UNITED STATES TRUSTEE
33 Whitehall Street
21st Floor
New York, New York 10004
(212) 510 - 0500

CHARLES MOORE
Debtor
207 East 60th Street
New York, New York 10022

VLOCK & ASSOCIATES, P.C.
Attorneys for Cadles of Grassy Meadows II, LLC, creditor
230 Park Avenue
New York, New York 10169
(212) 557-0020

Dated:       New York, New York
             October 25, 2006

                                    VLOCK & ASSOCIATES, P.C.
                                    Attorneys for
                                    Cadles of Grassy Meadows II, LLC
                                    Creditor
                                    230 Park Avenue
                                    New York, New York  10169
                                    (212) 557-0020

                                    By: _____
                                    Steven Giordano (SG 8328)

To: SHAPIRO & CROLAND
Attention: John P. DiIorio, Esq.
Counsel for Debtor
411 Hackensack Avenue
Hackensack, New Jersey 07601
(201) 488-3900

JOHN S. PEREIRA
Chapter 7 Trustee
150 East 58th Street
14th Floor
New York, New York 10155
(212) 758 - 5777

UNITED STATES TRUSTEE
33 Whitehall Street
21st Floor
New York, New York 10004
(212) 510 - 0500

CHARLES MOORE
Debtor
207 East 60th Street
New York, New York 10022

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re : Chapter 7
CHARLES MOORE, : Case No. 05-46781 (REG)
:
Debtor. :

## DECISION AND ORDER ON MOTION TO EXPUNGE CLAIM

APPEARANCES:

SHAPIRO & CROLAND
Counsel for Debtor
411 Hackensack Avenue
Hackensack, NJ 07601
By: John P. DiIorio, Esq.

VLOCK & ASSOCIATES, P.C.
Counsel for Claimant Cadles of Grassy Meadows, II, LLC
230 Park Avenue
New York, NY 10169
By: Stephen Vlock, Esq.

BEFORE: ROBERT E. GERBER
UNITED STATES BANKRUPTCY JUDGE

In this contested matter in a case under Chapter 7 of the Bankruptcy Code, debtor Charles Moore (the "Debtor") moves to expunge, under Bankruptcy Code section 502(b)(1), the claim filed by Cadles of Grassy Meadows II, LLC ("Cadles"). The Cadles claim rests on a judgment that was entered against the Debtor 14 years ago, and that Cadles acquired by assignment shortly before the filing of the Debtor's chapter 7 case.

The motion is granted. The following are the Court's findings of fact and conclusions of law in connection with this determination.

-1-

Facts

In 1984, the Debtor lived in Texas, and on February 3, 1984, he executed a guaranty for a mortgage obligation for a Texas real estate joint venture. In or about 1991, the mortgagee, Fidelity Savings & Loan Association ("Fidelity S&L"), brought a mortgage foreclosure action, and in either that same action or related litigation in Texas, went against the Debtor personally on his guaranty, seeking to recover the foreclosure deficiency.

On December 4, 1991, a judgment in the Texas guaranty action (the "Judgment") was entered in favor of Fidelity (and/or the RTC, which apparently took over Fidelity S&L, and which was identified in the Texas guaranty action as the real party in interest). At the time the Judgment was entered, it appears to have been in the amount of between $2 and $5 million.[1] However, the Judgment appears to have swelled, with the accrual of interest, to reach a claimed amount in excess of $25 million as of the time the Debtor's chapter 7 case was filed.

By the time he was sued in Texas on the guaranty, the Debtor was no longer a resident of the State of Texas, and was living in New York. But Fidelity S&L secured jurisdiction over the Debtor in the action in Texas on the guaranty under long-arm principles. The Debtor represented himself in the action, and Fidelity S&L served the Debtor with papers relating to the action, including a motion for summary judgment, by mail to his home in New York, New York.

In February 1995, the FDIC, as successor to the RTC, assigned the Judgment to Stonehenge-Fasa-Texas JDC, LLP ("Stonehenge"). In February, March or May 2005,

---

[1] Different documents seem to say different things. The difference may be accounted for by the inclusion or exclusion of accrued interest and/or attorneys fees. The difference is not material to this motion.

-2-

but "effective" at some earlier time, in either September or November 2004,[2] Stonehenge thereafter assigned the Judgment to Cadles.

Before the assignment to Cadles, the holders of the Judgment took no steps to enforce it, and after the assignment to Cadles, Cadles took no steps to enforce it other than to file its proof of claim. The Judgment was not recorded in New York,[3] and no writs of execution on the Judgment were sought or obtained in either Texas or New York. As described more fully in the legal discussion below, a judgment generally becomes dormant under Texas law if specified steps to enforce it are not taken within 10 years. Though as also discussed below, Texas procedural law provides for a mechanism to bring a legal action to revive a dormant judgment, within a 2-year period after a judgment becomes dormant, no such legal action was initiated here.

On October 14, 2005 the Debtor filed his chapter 7 petition in this Court. On November 22, 2005 (which by this time was more than 14 years after entry of the Judgment), Cadles filed a proof of claim for recovery under the Judgment, seeking $25,324,655.33 in this Court.

The Debtor now moves to expunge the Cadles claim. The Debtor argues that by reason of the inaction of the holders of the Judgment, the Judgment became dormant after the passage of 10 years under Texas statutory and case law; that the Judgment was not revived; and that Cadles' claim, premised on the Judgment, is thus unenforceable under

---

[2] There are a number of oddities and possible inconsistencies in the assignment documents, relating to different purported dates of assignment and "effective" dates for the assignment, but in light of the disposition of the Debtor's motion, the Court does not need now to address them.

[3] The Court mentions it, in the interests of completeness, because the Debtor relies on this. But Cadles argues that this fact is wholly irrelevant, and this Court agrees. As is apparent from the discussion below, it has nothing to do with the Texas statutory and caselaw analysis that determines this motion.

section 502(b)(1) of the Bankruptcy Code.[4] Cadles opposes the motion, arguing that its claim is still timely, by reason of tolling doctrine under Texas law.

### Discussion

### I.

### Asserted Dormancy of Judgment Before Consideration of Tolling Doctrine

Section 34.001(a) of the Texas Civil Practices & Remedies Code provides:

> If a writ of execution is not issued within 10 years after the rendition of a judgment of a court of record or a justice court, the judgment is dormant and execution may not be issued on the judgment unless it is revived.[5]

Thus Texas law establishes a ten-year statutory time limit during which the holder of a judgment can execute on that judgment. If the holder does not do so, the judgment becomes dormant.[6] It is possible, under Texas law, to revive a judgment that has become dormant, by obtaining a writ of *scire facias,* or by an action of debt.[7] But such an action must be brought within 2 years after the judgment becomes dormant.[8] Without dispute, no such action was brought here.

---

[4] Section 502(b) provides in substance, as relevant here, that a claim is allowable if, but only if, it is enforceable under "applicable law"—*i.e.*, nonbankruptcy law, most commonly state law. *See* Bankruptcy Code section 502(b)(1).

[5] Tex. Civ. Prac. & Rem. Code § 34.001(a).

[6] *Black's Law Dictionary* defines a dormant judgment as a judgment that "has not been executed or enforced within the statutory time limit. As a result, any judgment lien may have been lost and execution cannot be issued unless the judgment creditor first revives the judgment." *Black's Law Dictionary* (8th ed. 2004).

[7] Tex. Civ. Prac. & Rem. Code § 31.006. It provides:

> A dormant judgment may be revived by scire facias or by an action of debt brought not later than the second anniversary of the date that the judgment becomes dormant.

[8] *Id.*

Both sides seem to agree, or at least Cadles does not appear to dispute, that if a judgment has become dormant, and has not been revived, such a judgment cannot support a claim in this Court.[9]

The Debtor argues that under § 34.001(a), the Judgment became dormant on December 4, 2001, 10 years after the entry of the Judgment, when none of the holders of the judgment had obtained a writ of execution on the Judgment at any time before the 10-year period had passed. Thus, the Debtor argues, no execution on the Judgment could be issued unless the Judgment was revived. The Debtor then argues that any action for *scire facias* or action of debt had to have been commenced before December 4, 2003, 2 years after the Judgment had become dormant. Since (without dispute) no such action was commenced by that time, the Debtor argues that by the time the Judgment was acquired by Cadles, it was already dormant and forever dormant, and thus could not support Cadles Claim.

## II.

### Effect of Tolling Doctrine

In its response, Cadles does not quarrel with the foregoing, or the Debtor's contention that if the Judgment became dormant and was not revived, it cannot support a claim. But Cadles contends that by reason of tolling doctrine, the Judgment never became dormant, or that the time period for reviving the Judgment was tolled. Cadles argues in its brief that "if a person is absent from the State of Texas during the time in

---

[9] By reason of the lack of an apparent dispute as to that issue, this Court assumes that to be true for the purpose of this decision, and does not decide that question.

which a judgment creditor may seek to revive a judgment, *the running of the revival period is tolled.*"[10]  Shortly thereafter in its brief, Cadles argues:

> In this case, it is undisputed that the Debtor has
> been residing in New York for the past 14 years ...
> Thus, the Judgment *has not become dormant*
> because the time for Cadles to bring an action or
> scire facias has been tolled by the Debtor's absence
> from the State of Texas for the past 14 years.
> Therefore the Judgment is not dormant and the
> Debtor's motion must be denied.[11]

Though these say two different things, and though the latter tangles two different concepts (the 10-year period resulting in dormancy, and the 2-year period to bring an action to revive),[12] the Court gets Cadles' point. Cadles is in essence arguing that one way or another, the Debtor's absence from Texas during the last 14 years excused Cadles and its predecessors from the application of § 34.001.

Section 16.063 of the Texas Civil Practices & Remedies Code, entitled "Temporary Absence From State," provides:

> The absence from this state of a person against
> whom a cause of action may be maintained
> suspends the running of the applicable statute of
> limitations for the period of the person's absence."[13]

---

[10]   Cadles Br. at 2 (emphasis added).

[11]   Cadles Br. at 3 (emphasis added).

[12]   The Court does not fault Cadles for the tangling. The former statutory scheme, discussed in caselaw like *Zummo v. Cotham*, 155 S.W.2d 600 (Tex. 1941) and *Commerce Trust Co. v. Ramp*, 135 Tex. 84, 138 S.W.2d 531 (1940), had a 1-year period after which a judgment would become dormant if no execution was issued on it, and a 10-year period in which to revive it, very nearly the mirror image of the statute as it exists today.

[13]   Tex. Civ. Prac. & Rem. Code § 16.063.

The section 34.001(a) tolling provision became effective on September 1, 1985, and replaced former article 5537 of the Revised Civil Statutes, which provided:

> If any person against whom there shall be cause of action shall
> be without limits of this State at the time of the accruing of
> such action, or at any time during which the same might have
> been maintained, the person entitled to such action shall be at

The parties debate the interpretation of § 16.063, and put forward relevant caselaw in the area. But the Court believes that it should first more crisply state what it believes to be the real issues; then continue with the words of the statute; and only then continue with the applicable caselaw.

The first of the issues is whether § 16.063: (a) tolls the running of the 10 year period which, absent the required action, would make the Judgment dormant; (b) tolls the time to bring an action to revive (*i.e.*, to bring a proceeding for *scire facias* or on debt); or both. The second of the issues (assuming tolling under any circumstances) is when the cause of action to be tolled arose—so the Court can determine whether the Debtor was absent from the state at any relevant times, and when any tolling began. The third of the issues (and the most vigorously contested here) is the extent to which § 16.063 applies when the defendant against whom tolling is sought was a nonresident of the State of Texas throughout the period during which the statute of limitations began to run and continued to run, and was at all relevant times absent from the State.

*(1) What § 16.063 Tolls*

In determining what aspects of §§ 34.001 and 31.006 are tolled by reason of absence from the State under § 16.063 (there understandably being no contention that *none* of them are tolled), the Court starts, as usual with the words of the statute. Sections 34.001 and 31.006 plainly fit together, but they do different things. Section 34.001(a) provides for an automatic consequence if a writ of execution has not been issued within 10 years after the rendition of judgment—providing that the judgment will

> liberty to bring the same against such person after his return to
> the State and the time of such person's absence shall not be
> accounted or taken as a part of the time limit by any provision
> of this title.

See *Jackson v. Speer*, 947 F.2d 676, 679 (5th Cir. 1992) (quoting article 5537).

then become dormant, but providing also that it can be revived. But § 34.001(a) is not a statute of limitations, for at least two reasons. First, as a general matter, statutes of limitations are statutes "setting maximum time periods during which certain actions can be brought or rights enforced";[14] here the right to enforce a judgment exists subject to defeasance for failure to satisfy a condition—that condition being timely securing a writ of execution. Second, § 34.001 is not a statute of limitations because it does not result in the loss of a litigation right if the 10-year period has elapsed. The dormant judgment can still be revived, even after the passage of the 10-year period, if the requirements of a second statutory provision, § 31.006, have been satisfied.

By contrast, § 31.006 has within it a classic statute of limitations. It provides that a judgment can be revived by an action (for *scire facias* or on debt) "brought not later than the second anniversary of the date that the judgment becomes dormant."[15] That is the epitome of a maximum time period during which a certain action can be brought, and its structure is such that if the time goes by, and the time's passing has not been tolled, the right to revive the judgment is lost.

Section 16.063 "suspends the running of the *applicable statute of limitations.*"[16] It does not speak to other legal consequences that may result from the passage of time. It follows that § 16.063 applies to the 2-year period to bring an action provided for under § 31.006, but does not apply to the 10-year period under § 34.001. The causes of action assertedly tolled were the causes of action for securing a writ of *scire facias*, or on an

---

[14] *Black's Law Dictionary* 927 (6th ed. 1990), "Statute of limitations," listed after "Limitation."

[15] Tex. Civ. Prac. & Rem. Code § 31.006.

[16] Tex. Civ. Prac. & Rem. Code § 16.063, emphasis added.

action of debt. To the extent tolling is applicable in this case, it is a tolling of the 2-year period that began on December 4, 2001, and ran on December 4, 2003.

*(2) The Relevant Time Period*

Once one proceeds with the foregoing analysis, and examines the language of § 31.006, it is quite clear that under § 31.006, Cadles' assignor predecessors had to bring an action for *scire facias* or an action on debt no later than 2 years after the Judgment became dormant on December 4, 2001, unless a later time results from tolling under § 16.063. That is the time period during which the Debtor's presence or absence from the State of Texas (or conduct within it) is relevant.

During no part of this period (December 4, 2001 to December 4, 2003) was the Debtor a resident of the State of Texas, or, so far as the record reflects, present in Texas.[17] Nor did the cause of action to bring a proceeding for *scire facias* or an action on debt arise from anything the Debtor did in the State of Texas during that time—as it might, for example if a plaintiff were bringing a suit on a note the defendant had executed in Texas during the relevant time.

*(3) Tolling When Defendant Was At All Times Out of the State*

The third (and most debatable) issue is the extent, if any, to which § 16.063 applies to individuals who are not residents of the State of Texas, and who never absented themselves from the State at any time during which the statute of limitations was running, or engaged in any act in Texas during that time.

---

[17]  The Court does not have to consider the Debtor's presence in Texas between December 4, 1991 and December 4, 2001, nor when, strictly speaking, the causes of action for *scire facias* accrued— as the statute of limitations was not then running against Cadles' assignor predecessors before the Judgment became dormant in any event.

The statute itself, § 16.063, does not speak directly to the issue, although the Court can and does take note of the fact that it has no express exception for nonresidents. But its title, "Temporary Absence From State," does suggest its purpose. Its reference to "Temporary" suggests that in order to satisfy the requirements of § 16.063, the prospective defendant must have absented himself, and that the absence should have represented a change from an earlier relevant Texas presence. Similarly, its title rather strongly suggests that the statute applies to cases where the absence is significant, as it would be in cases where presence is necessary to bring the action, and where absence is relevant because it prevents the action from being commenced.

But the foregoing textual analysis could fairly be said to be less than compelling or conclusive. The Court then looks to the applicable case law.

It is well established under Texas caselaw that as a general rule, tolling under § 16.063 does not apply to nonresidents.[18] But as the Fifth Circuit, in *Jackson*, discussed in detail, there are two caselaw exceptions to the general rule. First, the tolling provision

---

[18] *See Jackson*, 974 F.2d at 678–79 (citing *Wise v. Anderson*, 359 S.W.2d 876, 879 (1962) and *Snoddy v. Cage*, 1849 WL 4066, at *6 (1849), cases decided under similar predecessor statutes)); *see also Oakes v. Horizon Financial Corp.*, 212 F.3d 594, 2000 WL 423211 at *2 (5th Cir. 2000) (unpublished) ("*Horizon Financial*"); *Howard v. Fiesta Texas Show Park, Inc.*, 980 S.W.2d 716, 722 (Tex. App. San Antonio 1998, reh'g denied); *Wyatt v. Lowrance*, 900 S.W.2d 360, 362 (Tex. App. Houston 1995, reh'g denied).

While one of the cases Cadles cites, the very old case of *Spiller v. Hollinger*, 148 S.W. 338 (Tex. Civ. App. 1911), has broad statements that do not mention the exclusion for non-residents, or the exceptions to exclusion discussed above, this Court is constrained to conclude that *Spiller* now reflects an overly simplistic, and now superseded, view of the Texas law.

Likewise, the Court cannot rely on a second case upon which Cadles relies, *Dicker v. Binkley*, 555 S.W.2d 495 (Tex. Civ. App. 1977). Cadles quotes the West headnote, and not the decision itself, and even the headnote is misquoted and/or garbled. When the *Dicker* decision itself is reviewed, it is plain that the tolling to which the *Dicker* was referring applied to one of the situations described above—where the defendant had come into Texas, executed a note in Texas, and left the state, and was being sued on the note. That is one of the paradigmatic situations in which the tolling statute understandably applies. As the Debtor here properly notes (Reply Br. at 3), the issue here is not whether the statute of limitations was tolled for Cadles to bring a action with regard to the Debtor's *guaranty*. It is instead whether the statute of limitations was tolled for one of Cadles' assignor predecessors to bring an action for *scire facias* or on debt.

-10-


applies to nonresident defendants who were present in Texas when they executed a promissory note or otherwise contracted a debt.[19] Second, tolling under section 16.063 applies to nonresident defendants who were present in the State of Texas when the cause of action accrued.[20]

But neither of these exceptions applies here. The first is inapplicable because the action in question is not an action to collect on a promissory note or debt. It is, rather, one for *scire facias* or an action on debt with respect to an earlier judgment; the claim on the earlier guaranty obligation was replaced by the Judgment.

The second likewise is inapplicable, as the Debtor here was not present in Texas when the relevant cause of action accrued. As the Fifth Circuit noted in *Jackson*, a cause of action accrues when facts come into existence that authorize a claimant to seek judicial remedy.[21] In this Court's view, the most appropriate choice for that time, under the facts here, is the time when the Judgment became dormant, when an action needed to be commenced in order to revive it, and when the statute of limitations began to run. But even if facts came into existence authorizing Cadles' assignor predecessors to bring the necessary action for *scire facias* or an action for debt before the Judgment became dormant and before an action to revive it became necessary, such a proceeding could not have been brought before the Judgment itself was entered, in 1991. By that time, the Debtor was already a nonresident of the State.[22]

---

[19] *Jackson*, 974 F.2d at 679.

[20] *Id.*

[21] *Id.*

[22] The Court notes suggestions to the contrary at the oral argument on this motion. In argument that was not wholly clear, Cadles argued:

> Mr. Moore was a resident of Texas. He lived at 2043 Swift Boulevard, Houston, Texas. At the time, I believe, that this

## Conclusion

For the foregoing reasons, the Court concludes that the tolling provision of § 16.063 does not apply. The Judgment became dormant on December 4, 2001, and the time to commence an action to revive it expired on December 4, 2003, 2 years later—not having been tolled by (or during) the Debtor's continuous absence from Texas throughout that 2-year period. The Debtor's motion to expunge the Cadles claim is granted.

SO ORDERED.

Dated: New York, New York  
October 23, 2006

*s/Robert E. Gerber*  
United States Bankruptcy Judge

---

    debt was taken out in late eighty—well, he lived there from August '89 forward, so his argument about being a non-resident I don't believe is— he can use that argument at this point because he was a resident and he moved out and he has not returned. So that's, even under his interpretation, exactly what the statute was meant for under the debtor's interpretation."

Tr. at 12. But the Debtor stated unequivocally in his declaration that when he was sued on the guaranty, at some point in time prior to the 1991 entry of judgment, and at the time the Judgment was entered against him, he was living in New York. Moore Decl. ¶ 3. No evidence to the contrary was submitted. Under these circumstances, insufficient evidence was proffered to give rise to an issue of fact. Cadles' unsupported statements in argument were not a substitute for evidence.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 26, 2006, I caused a copy of NOTICE OF APPEAL to be served by mail upon the parties listed on the following page, by depositing a true copy of same enclosed in a post-paid, properly addressed wrapper, in a post-office/official depository under the exclusive care and custody of the United States Postal Service within the State of New York.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are wilfully false, I am subject to punishment.

Dated:   New York, New York
         October 26, 2006

_____
STEVEN GIORDANO (SG 8328)

SHAPIRO & CROLAND
Attention: John P. DiIorio, Esq.
Counsel for Debtor
411 Hackensack Avenue
Hackensack, New Jersey 07601
(201) 488-3900

JOHN S. PEREIRA
Chapter 7 Trustee
150 East 58th Street
14th Floor
New York, New York 10155
(212) 758 - 5777

UNITED STATES TRUSTEE
33 Whitehall Street
21st Floor
New York, New York 10004
(212) 510 - 0500

CHARLES MOORE
Debtor
207 East 60th Street
New York, New York 10022